862 So.2d 76 (2003)
Howard W. DOIG, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and Sears Roebuck and Company, Appellees.
No. 1D02-4036.
District Court of Appeal of Florida, First District.
November 13, 2003.
Rehearing Denied January 5, 2004.
Appellant Howard W. Doig, pro se, Melbourne.
John D. Maher and Geri Atkinson-Hazelton, Tallahassee, for Appellee.
KAHN, J.
Howard W. Doig appeals an order of the Unemployment Appeals Commission (Commission). The Commission affirmed the appeals referee's determination that Doig voluntarily left part-time work without good cause attributable to the employer, Sears Roebuck and Company, and therefore was overpaid more than $2000 in unemployment benefits which are subject to recovery. We reverse.
The record indicates that Mr. Doig was dismissed from his full-time job with Volt Telecommunications on March 5, 2001, and he began collecting unemployment benefits. He started working part-time at Sears in May 2001 and continued there until October 2001; he then worked part-time at Home Depot from October 2001 until March 2002. He began working full-time for another employer in April 2002. During his part-time employment, Mr. Doig collected a reduced benefit. See § 443.111(4)(b), Fla. Stat. (2000).
After a telephone hearing, the appeals referee rendered an order in Tallahassee and made findings of fact:
The claimant began his employment with Sears Roebuck and Company in May 2001 and was working as a part-time sales associate in the tool department at a store in Melbourne, Florida. In October 2001 the claimant applied for *77 a part-time job as a sales associate at Home Depot, with the intention of working both part-time jobs concurrently. However, Sears Roebuck and Company has a conflict of interest policy which does not allow a sales associate to work for a competitor. Therefore, the claimant was told that he would have to give up his job at Sears if he accepted employment with Home Depot. The claimant choose [sic] to accept the job with Home Depot because it offered better pay and benefits so he quit his employment with Sears Roebuck and Company on October 19, 2001.
The claimant filed an initial claim for benefits effective March 4, 2001, which established a weekly benefits [sic] of $175. From the benefit week ending October 20, 2001 through the week ending March 2, 2002, the claimant received partial benefits totaling $2052.
From these findings, the referee concluded that Mr. Doig voluntarily left part-time work without good cause attributable to the employer and, therefore, was overpaid $2,052 in unemployment benefits:
The record shows that the claimant quit his employment with Sears Roebuck and Company in order to accept a job at another retail store. There was some discussion at the hearing by the parties about the employer's conflict of interest policy which prevented the claimant from accepting another part-time job with a competitor. The claimant contented [sic] that he was going to be working in the electrical department at Home Depot rather than selling tools so there was no conflict of interest. Nevertheless, it was the claimant's choice to leave his position with Sears Roebuck and Company to accept another job offer. The claimant also mentioned other factors which caused him dissatisfaction with his job at Sears such as the loss of sales commissions when cashiers rang up sales, and having his performance judged by meeting a standard for sales of maintenance agreements. However, the claimant's own testimony establishes that the [sic] did not leave his job for these reasons because he was willing to remain employed with Sears if the company had allowed him to do so. The only reason he did not continue working part-time was the employer's policy, which prevented him from working concurrently with a competitor.
* * *
The record shows that the claimant received benefits totaling $2052 for benefit weeks during the period of October 2001 to March 2002. An overpayment was created because he was disqualified for the period of time he was originally paid. That disqualification has been affirmed in this decision. Therefore, it is held that the claimant was overpaid benefits and this sum is subject to recovery by the Agency.
On appeal, Mr. Doig argues that while working for Sears, he was receiving partial unemployment benefits as a result of losing his full-time job with his previous employer (Volt Telecommunications), and his benefit status should not have changed when he left one part-time job (with Sears) for another (with Home Depot). We agree.
The relevant statute does not specifically address this particular situation:
An individual shall be disqualified for benefits:
(1)(a) For the week in which he or she has voluntarily left his or her work without good cause attributable to his or her employing unit or in which the individual has been discharged by his or her employing unit for misconduct connected with his or her work, if so found by the division. The term "work," as used in this paragraph, means any work, whether full-time, part-time, or temporary.

*78 1. Disqualification for voluntarily quitting shall continue for the full period of unemployment next ensuing after he or she has left his or her full-time, part-time, or temporary work voluntarily without good cause and until such individual has earned income equal to or in excess of 17 times his or her weekly benefit amount; the term "good cause" as used in this subsection includes only such cause as is attributable to the employing unit or which consists of illness or disability of the individual requiring separation from his or her work. No other disqualification may be imposed. An individual shall not be disqualified under this subsection for voluntarily leaving temporary work to return immediately when called to work by the permanent employing unit that temporarily terminated his or her work within the previous 6 calendar months.
§ 443.101, Fla. Stat. (2000). In a similar case, however, this court reversed a claimant's disqualification from unemployment compensation benefits. See Stewart v. Dollar Tree, 635 So.2d 73 (Fla. 1st DCA 1994).
In Stewart, the claimant had been terminated from full-time employment and approved for unemployment benefits. See id. at 73. The claimant then accepted a part-time job and worked at that job for four weeks, at which point she quit to accept another part-time job that paid more money and had the prospect of eventual full-time employment. See id. She could not keep both part-time jobs because the hours conflicted. See id. The referee determined that the claimant voluntarily left her first part-time job without good cause attributable to her employer and concluded that she was disqualified from receiving benefits. See id. The UAC affirmed. See id. On appeal, this court concluded that section 443.101(1)(a) did not apply on these facts:
It seems relatively clear to us that, given the facts of this case, the "work" referred to in section 443.101(1)(a) would be the full-time job from which appellant was terminated because of lack of work, not the part-time job which she later accepted in an effort to mitigate her misfortune.
Id. at 73-74. The court further explained its decision:
The facts of this case graphically illustrate the absurdity of the Commission's position. Appellant, clearly entitled to benefits because of the termination of her full-time employment, accepted a part-time job to try to make ends meet. Assuming that the earnings from that part-time employment met the threshold, their receipt would reduce the amount of benefits to which appellant would be otherwise entitled. § 443.111(3), Fla. Stat. (Supp.1992). In an effort to improve her economic situation, appellant left the first part-time job for another which paid a greater hourly wage, permitted her to work more hours each week and offered the prospect of eventual full-time employment at a rate of pay reasonably close to that of the full-time job from which she had been terminated. In response, rather than commending her efforts to improve her economic position and, thereby, to reduce the amount of benefits to which she would be entitled, the Commission concluded that appellant had disqualified herself from receiving any further benefits. Clearly, the legislature did not intend such a result.
Id. at 74. The court also relied on reasoning in another case involving part-time employment, Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. 2d DCA 1981), but the holding in that case has since apparently been superseded by an amendment to section 443.101(1)(a). See Rochussen v. Unemployment Appeals Comm'n, *79 795 So.2d 1075, 1077-79 (Fla. 2d DCA 2001). Nevertheless, Neese is not critical to the holding in Stewart and is distinguishable from that case. The claimant in Neese was employed concurrently in a full-time job and a part-time job when she lost her full-time job and qualified for unemployment benefits; she subsequently quit her part-time job and moved to another city. See Neese, 404 So.2d at 371.
Finally, this case is also distinguishable from the two main cases relied on by the UAC: Rochussen and Groudas v. Pinellas County School Board, 793 So.2d 983 (Fla. 2d DCA 2001). Like the claimant here, in both Groudas and Rochussen, the claimants qualified for unemployment compensation benefits after being terminated from full-time employment and, thereafter, accepted temporary part-time work. See Rochussen, 795 So.2d at 1076; Groudas, 793 So.2d at 984. Like the claimant here, in both Groudas and Rochussen, the claimants later quit the part-time work. See Rochussen, 795 So.2d at 1076; Groudas, 793 So.2d at 984. Unlike the claimant here, however, the claimants in Groudas and Rochussen did not immediately begin work in another part-time job; rather, they sought to resume collection of their full unemployment compensation benefits. See Rochussen, 795 So.2d at 1076; Groudas, 793 So.2d at 984.
The claimant here, like the claimant in Stewart, merely left one part-time job for another and was never completely unemployed; indeed, his jobs actually overlapped for two days. In this regard, as in Stewart, section 443.101(1)(a) does not apply, as indicated above.
REVERSED.
ERVIN and BOOTH, JJ., concur.